**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MANIK CHANDA, Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| CRONOS GROUP INC., and MICHAEL GORENSTEIN, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Manik Chanda ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings by Cronos Group, Inc. ("Cronos" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Cronos; and (c) review of other publicly available information concerning Cronos.

## NATURE OF THE ACTION AND OVERVIEW

1.       This is a class action on behalf of persons and entities that acquired Cronos securities between August 21, 2018 and August 30, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.       Cronos is a cannabis company. It is incorporated under the laws of Ontario, Canada with its headquarters in Toronto, Ontario.

3.       On August 30, 2018, Citron Research published an article entitled "Cronos: The Dark Side of the Cannabis Space," alleging, among other things, that the Company has been "deceiving the investing public by purposely not disclosing the size of its distribution agreements with provinces – unlike every other major cannabis player" and that this was because "the agreements are so small that they could never justify the premium investors are paying for the stock."

4.       On this news, the Company's share price fell $3.62, or over 28%, to close at $9.12 per share on August 30, 2018, on usually heavy trading volume.

5.       Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the size of

Cronos's distribution agreements with the provinces was relatively small; and (2) that, as a result of the foregoing, Defendants' positive statements in about Cronos's business, operations, and prospects, were materially false and/or misleading, and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District, and the Company's securities are traded within this Judicial District.

10.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Manik Chanda, as set forth in the accompanying certification, incorporated by reference herein, purchased Cronos securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Cronos, Inc. is incorporated under the laws of Ontario, Canada with its principal executive offices located in Toronto, Canada. Its common shares trade on the NASDAQ exchange under the symbol "CRON."

13.     Defendant Michael Gorenstein ("Gorenstein") was, at all relevant times, the Chief Executive Officer ("CEO"), President, and Chairman of the Company's Board of Directors.

14.     Defendant Gorenstein is also referred to hereinafter as the "Individual Defendant." Defendant Gorenstein, because of  his position with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of his position and access to material non-public information available to them, Individual Defendant knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  Individual Defendant is liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

15.     Cronos is a cannabis company. It is incorporated under the laws of Ontario, Canada

with its headquarters in Toronto, Ontario.

### Materially False and Misleading
### Statements Issued During the Class Period

16.     The Class Period begins on August 21, 2018. On that day, the Company issued a

press release entitled "Cronos Group Inc. Announces Provincial Supply Agreements." Therein, the

Company, in relevant part, stated:

> Cronos Group has secured listings and signed binding master supply agreements with both the Ontario Cannabis Retail Corporation and the BC Liquor Distribution Branch. In combination, these provinces encompass over 50% of the Canadian population and hence the potential customer base which the Company is prepared to serve.

> The Company has also secured listings and has accepted supplier terms with the Nova Scotia Liquor Corporation and Prince Edward Island Liquor Corporation. Cronos Group will be offering Dried Flower, Pre-Rolls and its highly rated Oils through both government-operated retail stores and online platforms across its three recreational brands.

> Cronos Group plans to serve the Canadian recreational market through its bi-coastal production platform which includes facilities in British Columbia and Ontario. In combination, these facilities are expected to comprise 355,500 square feet of premium growing space. With access to over 1.2 million square feet of domestic capacity that is both actively licensed and committed facilities with production and sales licenses expected in the near future, Cronos Group is prepared to ensure premium quality product supply across the Canadian market.

> "Cronos is excited to provide our premium quality products to Canadian consumers for the upcoming legalization and launch of the recreational market," said Mike Gorenstein, CEO of Cronos Group. "Day one we are ready to build and establish our brand through our premium products and we are committed to building strong relationships with the provinces and our customers."

17.     The above statements identified in ¶16 were materially false and/or misleading, and

failed to disclose material adverse facts about the Company's business, operations, and prospects.

Specifically, Defendants failed to disclose to investors: (1) that the size of Cronos's distribution agreements with the provinces was relatively small; and (2) that, as a result of the foregoing, Defendants' positive statements about Cronos's business, operations, and prospects, were materially false and/or misleading, and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

18.     On August 30, 2018, Citron Research published an article entitled "Cronos: The Dark Side of the Cannabis Space," that alleged:

> Cronos management appears to have been deceiving the investing public by purposely not disclosing the size of its distribution agreements with provinces – unlike every other  major cannabis player.

> Our sources have informed us that it's because the agreements are so small they could never justify the premium investors are paying for the stock.

> Some may argue that US listed cannabis stocks are subject to stricter regulation so companies are much more careful with what they disclose but both Canopy Growth  (NYSE:CGC) and Tilray (NASDAQ:TLRY) are much more forthright. . . . [C]ompare [Cronos's press release] to Canopy Growth and Tilray's disclosures.

**CANOPY ENTERS MOU WITH BC LIQUOR DISTRIBUTION BRANCH TO SUPPLY BRITISH COLUMBIAN MARKET**

**July 12, 2018**

**ALDERGROVE & DELTA, BC -** Continuing the theme of securing major supply agreements in every Canadian province and territory with announced supply plans, Canopy Growth Corporation (TSX:WEED)(NYSE:CGC) (the "Company" or "Canopy Growth") is proud to announce that cannabis grown in its Delta and Aldergrove facilities, its other sites across the country, and products from its CraftGrow partners will be sold in fine retailers, both government-operated and private, across the province of British Columbia post-prohibition.

Canopy Growth entered into a supply MOU with the BC Liquor Distribution Branch to make available 5,719 kg of high-quality cannabis products in the first 12-months following October 17, 2018. The quantity referenced is a delivery requirement agreed to in the MOU, not an internal allocation.



Cronos is all talk. Last quarter, despite having the first ever license issued by Health Canada in late 2013, Cronos has vastly underperformed every big competitor.



19.    On this news, the Company's share price fell $3.62, or over 28%, to close at $9.12 per share on August 30, 2018, on usually heavy trading volume.

## CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired

Cronos securities between August 21, 2018 and August 30, 2018, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

21.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Cronos's common shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Cronos common shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Cronos or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

22.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants wrongful conduct in violation of federal law that is complained of herein.

23.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

24.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the Exchange Act was violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public omitted and/or misrepresented material facts about the business, operations, and prospects of Cronos; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

25.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

26.      The market for Cronos's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Cronos's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Cronos's securities relying upon the integrity of the market price of the Company's securities and market information relating to Cronos, and have been damaged thereby.

27.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Cronos's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Cronos's business, operations, and prospects as alleged herein.

28.      At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading

statements about Cronos's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

29.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

30.     During the Class Period, Plaintiff and the Class purchased Cronos's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

31.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Individual Defendant, by virtue of his receipt of information reflecting the true facts regarding Cronos, his control over, and/or receipt and/or modification of Cronos's allegedly materially misleading misstatements and/or his association with

the Company which made him privy to confidential proprietary information concerning Cronos, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

32.     The market for Cronos's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Cronos's securities traded at artificially inflated prices during the Class Period.  On August 29, 2018, the Company's share price closed at a Class Period high of $12.74 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Cronos's securities and market information relating to Cronos, and have been damaged thereby.

33.     During the Class Period, the artificial inflation of Cronos's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Cronos's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Cronos and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

34.     At all relevant times, the market for Cronos's securities was an efficient market for the following reasons, among others:

(a)     Cronos shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Cronos filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Cronos regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Cronos was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

35.     As a result of the foregoing, the market for Cronos's securities promptly digested current information regarding Cronos from all publicly available sources and reflected such information in Cronos's share price. Under these circumstances, all purchasers of Cronos's securities during the Class Period suffered similar injury through their purchase of Cronos's securities at artificially inflated prices and a presumption of reliance applies.

36.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have

considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

37.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Cronos who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

38.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

39.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other

members of the Class to purchase Cronos's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

40.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Cronos's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

41.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Cronos's financial well-being and prospects, as specified herein.

42.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Cronos's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Cronos and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

43.    Individual Defendant's primary liability and controlling person liability arises from the following facts: (i) he was a high-level executive and/or director at the Company during the Class Period and member of the Company's management team or had control thereof; (ii) by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) Individual Defendant enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

44.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Cronos's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.   As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

45.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Cronos's securities

was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Cronos's securities during the Class Period at artificially high prices and were damaged thereby.

46.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Cronos was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Cronos securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

47.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

48.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendant**

49.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.     Individual Defendant acted as a controlling person of Cronos within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his high-level position and his ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendant had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendant  were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, Individual Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

52.     As set forth above, Cronos and Individual Defendant each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of his position as controlling person, Individual Defendant is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: September 4, 2018                    **GLANCY PRONGAY & MURRAY LLP**


By:   *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
230 Park Avenue, Suite 530
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Manik Chanda*

## SWORN CERTIFICATION OF PLAINTIFF

Cronos Group Inc. **SECURITIES LITIGATION**

I, Manik Chanda, certify:

1.  I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2.  I did not purchase Cronos Group Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Cronos Group Inc., during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5.  I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ____ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _Sept 1, 2018_

_Manik Chanda_
(Please Sign Your Name Above)

[REDACTED]

**Manik Chanda's Transactions in Cronos Group Inc.  (CRON)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 08/27/2018 | Bought | 2,000 | $12.4200 |
| 08/27/2018 | Bought | 18,500 | $12.1152 |
| 08/28/2018 | Bought | 2,000 | $11.1492 |
| 08/28/2018 | Bought | 14,700 | $11.1264 |
| 08/28/2018 | Bought | 1,000 | $11.3100 |
| 08/29/2018 | Bought | 13,000 | $12.0702 |
| 08/30/2018 | Bought | 14,500 | $11.6212 |